706 A.2d 203

J.F., PLAINTIFF–RESPONDENT, v. B.K.,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 26, 1998—Decided February 17, 1998.

Before Judges PETRELLA, SKILLMAN and EICHEN.

*Anthony P. D'Alessio,* attorney for appellant (*Michelle Miller,* on the brief).

*W. Randolph Smith,* attorney for respondent.

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This is a domestic violence case. The predicate for the trial court's assumption of jurisdiction under the Prevention of Domestic Violence Act (the Act), *N.J.S.A.* 2C:25–17 to –33, was that the parties had a brief dating relationship in high school which ended in 1993.[1]

On June 28, 1996, plaintiff filed a domestic violence complaint against defendant. On July 2, 1996, the court held a hearing and based on the evidence presented entered an order dismissing the complaint.

On February 24, 1997, plaintiff filed a second domestic violence complaint against defendant. The only act of domestic violence alleged in the complaint was "[l]eaving notes on [plaintiff's] vehicle while it was parked at her work place." The complaint also alleged a history of domestic violence consisting of defendant having "[a]ssaulted plaintiff by slapping her in [the] face" on a prior occasion for which no date was specified.

A final hearing on the complaint before a different judge than the one who had heard the June 28, 1996 complaint was held on March 4, 1997. Plaintiff testified that defendant grabbed her by the throat and slapped her in the face while they were dating in high school in the spring of 1993. Plaintiff also testified that after they broke up, defendant made harassing telephone calls to her and would frequently drive past her house. In addition, defendant spit in her face at a party one time because she would not talk to him. According to plaintiff, in April 1996, defendant began coming to her place of employment, a retail establishment called Sneaker Stadium, on which occasions he called her a "[w]hore, slut, bitch" and threatened to kill her. Plaintiff did not indicate

---

[1] Because defendant has not raised any issue as to the trial court's jurisdiction, we assume for the purpose of this opinion that the parties' short dating relationship four years before the alleged act of domestic violence was sufficient under *N.J.S.A.* 2C:25–19(d) to confer jurisdiction under the Act. *See D.C. v. F.R.,* 286 *N.J.Super.* 589, 670 A.2d 51 (App.Div.1996); *compare Jutchenko v. Jutchenko,* 283 *N.J.Super.* 17, 660 A.2d 1267 (App.Div.1995).

that any of these incidents occurred subsequent to the July 2, 1996 hearing which had resulted in the dismissal of her prior domestic violence complaint. The plaintiff also introduced into evidence the note which was the subject of her new complaint, which read: "Please page me 290–6512. I would like to talk to you. It's a must. Thanks."

After plaintiff completed her testimony, the trial court had the following colloquy with defendant, who was appearing pro se:

THE COURT: All right. Sir do you have questions? Do you want to make a statement?

[Defendant]: It's not my handwriting. I have witnesses stating where I was at this—, at the time that this was—

THE COURT: Sir, do you want to make a statement? Give me your statement.

[Defendant]: I did not write this.

THE COURT: Do you want to make a statement about all the allegations, sir? What's your statement?

[Defendant]: My statement is, we were in court for this already. It was dropped. And why I'm here now—

THE COURT: I don't care about court. I want to know whether you admit or deny these allegations.

[Defendant]: No, I deny them.

THE COURT: Did you go to Sneaker Stadium?

[Defendant]: I've been there, yes.

THE COURT: All right. Fine. Anything else you want to tell me?

[Defendant]: No, that's basically it sir.

Based on this evidence the court rendered an oral opinion which stated in pertinent part:

They had a relationship. Dating relationship that comes within the Prevention of Domestic Violence Act. I find that they broke up, and the plaintiff would see him out various places. I find that at one time the defendant was at a party with the plaintiff and spit in her face because she wouldn't talk to him. I find that during the relationship they were at a friend's house, and the defendant grabbed the plaintiff by the throat, slapped her in the face. I find that he has telephoned her approximately one hundred times in the last three and a half years. I find that he came to her work at Sneaker Stadium at least seven times. And at various times he would come up to her and say, whore, slut, bitch, and that he would kill her.

I find that, by a preponderance of the evidence, that the defendant intended to alarm and upset the plaintiff. I find that she was upset and alarmed. I find a violation of *N.J.S.A.* 2C:33–4, harassment. I find that the plaintiff fears the

defendant. I find a pattern of harassment over the last three and a half, almost four years. And I will sign a final restraining order.

The court's opinion did not mention the note which had been the subject of plaintiff's complaint.

The court subsequently entered a final domestic violence restraining order containing the usual restraints against defendant. Defendant appeals. We reverse.

█ *N.J.S.A.* 2C:25–19(a) defines "domestic violence" as the infliction upon a person protected by the Act of an act which constitutes a violation of one of the sections of the Code of Criminal Justice set forth therein. The only act of domestic violence which plaintiff alleged in her complaint was that plaintiff had put a note on her car asking to talk to her. We are satisfied that absent a showing of surrounding circumstances which could support a finding that such ordinarily innocuous conduct constituted an act of harassment within the intent of *N.J.S.A.* 2C:33–4, such conduct could not establish the predicate crime for a finding of domestic violence. Plaintiff did not undertake to present any evidence of such surrounding circumstances. *Compare State v. Hoffman,* 149 *N.J.* 564, 585–86, 695 *A.*2d 236 (1997). Instead, plaintiff's testimony focused entirely upon events which occurred significantly before defendant put the note on her car. Therefore, plaintiff failed to prove that defendant committed an act of domestic violence by leaving the note on her car. *See Cesare v. Cesare,* 302 *N.J.Super.* 57, 694 *A.*2d 603 (App.Div.), *certif. granted,* 152 *N.J.* 9, 702 *A.*2d 348 (1997); *Corrente v. Corrente,* 281 *N.J.Super.* 243, 657 *A.*2d 440 (App.Div.1995); *Peranio v. Peranio,* 280 *N.J.Super.* 47, 654 *A.*2d 495 (App.Div.1995).

█ The trial court found that defendant had committed domestic violence based not on the act of domestic violence alleged in plaintiff's complaint but rather on a course of prior conduct which, with the exception of one incident which occurred in the spring of 1993, was not even mentioned in the complaint. This was clearly improper. It constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic

violence into a hearing on other acts of domestic violence which are not even alleged in the complaint. *See Nicoletta v. North Jersey Dist. Water Supply Comm'n,* 77 *N.J.* 145, 162–63, 390 *A.*2d 90 (1978); *Department of Law & Pub. Safety v. Miller,* 115 *N.J.Super.* 122, 126, 278 *A.*2d 495 (App.Div.1971). Defendant could not prepare a defense to charges that he was not even told about until the day of the hearing. We also note that the trial court interrupted defendant when he indicated that he had witnesses to present with respect to the charge alleged in the complaint.

■ The procedural unfairness of the proceeding resulting in the finding of domestic violence against defendant was compounded by the fact that plaintiff's prior complaint alleging some or all of the prior acts which the court found to constitute acts of domestic violence was dismissed after a hearing. Therefore, even if those acts had been alleged in the present complaint, plaintiff would be precluded under principles of res judicata and collateral estoppel from relitigating allegations which had been decided adversely to her in the earlier hearing. *See State v. Gonzalez,* 75 *N.J.* 181, 186–87, 380 *A.*2d 1128 (1977); *Allesandra v. Gross,* 187 *N.J.Super.* 96, 103, 453 *A.*2d 904 (App.Div.1982).

Accordingly, the final restraining order entered against defendant is reversed.