**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1527-20

E.A.M.,[1]

    Plaintiff-Respondent,

v.

M.S.M.,

    Defendant-Appellant.

_____

Argued February 2, 2022 – Decided February 15, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-1451-21.

Eric R. Foley argued the cause for appellant (Afonso Archie & Foley, PC, attorneys; Eric R. Foley, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the identity of domestic-violence victims and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(10).

Defendant appeals a final restraining order (FRO), entered pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Because the trial judge erred in issuing the FRO based on something other than the predicate act alleged by plaintiff and in finding plaintiff had established the need for a restraining order for her protection under the second prong of the analysis delineated in Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006), we reverse and vacate the FRO.

I.

We glean these facts from the evidence produced at trial and the pleadings and orders contained in the record.

On October 30, 2020, defendant filed a domestic-violence complaint against plaintiff. In the complaint, defendant certified he had been "living with [plaintiff] for approximately one month in a townhome, rented by the plaintiff, while separated from his wife" and alleged she had become "aggressive" with a knife "while they still both resided at the townhome." Asked in the complaint to describe his relationship with plaintiff, defendant certified plaintiff was a former "household member." On the same day, a judge granted defendant a temporary restraining order (TRO) against plaintiff. The TRO prohibited her from returning to the townhome.

On November 19, 2020, plaintiff filed a domestic-violence complaint against defendant. She alleged he had endangered her life, health, or well-being on October 30, 2020, by stealing her social security number, which his wife then used to authorize the gas company to shut off the gas "in the parties' shared residence." Plaintiff identified "harassment" as the criminal offense defendant had committed. In the "prior history of domestic violence" portion of the complaint, plaintiff alleged, among other things, defendant on October 11, 2020, had stolen her prescribed medication and medical marijuana and later that day, after admitting the theft, "moved out of the home." Asked in the complaint to describe her relationship with defendant, plaintiff certified defendant "[w]as . . . a [h]ousehold [m]ember." A judge granted plaintiff a TRO against defendant.

The trial judge conducted a one-day joint hearing as to each party's FRO application. Both parties testified and represented themselves at trial. Defendant confirmed under oath he and plaintiff had lived in the same household for two or three weeks.

Plaintiff testified as to the October 30 events, which had led her to file the complaint against defendant and seek a restraining order. Plaintiff also testified about the October 11 medication theft she had described in the "prior history of domestic violence" section of her complaint. To support that allegation, plaintiff

3

submitted a voicemail of defendant purportedly admitting to her mother he had stolen plaintiff's prescription medicine. The voicemail was not played on the record, but defendant, while denying he had stolen plaintiff's medication, admitted he had told plaintiff's mother he had taken it.[2]

Plaintiff confirmed defendant continued to live in New Jersey, but she had moved out of state. She declined to give her address because she did not want defendant to know where she lived. The trial judge asked her, given that the parties did not live in the same state, if she "really [felt] that [she] need[ed] a restraining order." Plaintiff responded: "Yes, because when I went to get a property standby to go get – so like when I first got the T – so I had to go through an appeal process because I was . . . barred from all of my possessions, all my money, my wallet, everything." Plaintiff apparently was referencing when she had been prohibited from returning to the townhome because of the TRO defendant had obtained against her.

At the conclusion of the hearing, the trial judge placed his decision on the record. He found defendant was "not to be believed" and dismissed the TRO

---

[2] The record before us is not clear if the voicemail was admitted in evidence, and there is no description of what was said on the voicemail. If a trial court relies on a submitted document or recording, it must clearly admit it into evidence and describe the evidence.

defendant had against plaintiff. He found plaintiff's testimony to be "somewhat suspect in a lot of ways," but because "there is direct proof that [defendant] stole prescription medication from [plaintiff] . . . while living together," citing defendant's admission, he granted plaintiff a final restraining order against defendant "based on that form of harassment." The trial judge made no findings concerning the need of an FRO to protect plaintiff pursuant to the second prong of <u>Silver</u>, 387 N.J. Super. at 127. On the same day, the trial judge entered the FRO.

After defendant filed an appeal of the FRO, the trial judge submitted an amplification of the record pursuant to <u>Rule</u> 2:5-1(b). In the amplification, the trial judge acknowledged that to issue the FRO, he had to find plaintiff had met <u>Silver</u>'s two required prongs. As for the first prong, in which plaintiff had to prove defendant had committed one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a), <u>see</u> <u>Silver</u>, 387 N.J. Super. at 125-26, the trial judge stated plaintiff had proved defendant had "committed the predicate act of criminal mischief, N.J.S.[A.] 2C:17-3, by taking her prescription medication. This act along with other acts of harassment suffered at the hands of the defendant . . . proves the existence of an 'egregious act' of domestic violence adequate for the entry of the final restraining order," (citing <u>McGowan v. O'Rourke</u>, 391 N.J.

Super. 502, 506 (App. Div. 2007)). In his decision on the record, the trial judge did not find any "other acts of harassment" by defendant and in his amplification he did not identify those other acts. As to the second prong of Silver, in which the court had to determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse," Silver, 387 N.J. Super. at 127, the trial judge stated in his amplification "[t]he proof establish[ed] that [defendant] acted in a way to seriously annoy the plaintiff . . . as to require the need for the protection of this final restraining order." He did not identify what "proof" established the need for an FRO.

In this appeal, defendant argues: (1) the trial court lacked jurisdiction because defendant was not a household member with plaintiff; (2) the trial judge's findings as to the necessity of an FRO under the second prong of Silver were inadequate; and (3) the trial judge erred in relying on the voicemail, which was not marked or formally moved into evidence.

II.

The scope of our review is limited in an appeal involving an FRO issued after a bench trial. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "The general rule is that findings by the trial court are binding on appeal when

supported by adequate, substantial, credible evidence."  Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Gnall v. Gnall, 222 N.J. 414, 428 (2015).  We do not defer to a trial judge's factual findings if they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Cesare, 154 N.J. at 412; see also C.C., 463 N.J. Super. at 428.  We review de novo a trial judge's legal conclusions.  C.C., 463 N.J. Super. at 429.

We need not address defendant's jurisdictional argument at length. Suffice it to say, before a trial court can exercise jurisdiction over parties in a domestic violence matter, it must find the alleged victim meets the statutory definition of a "victim of domestic violence" under N.J.S.A. 2C:25-19(d).  See R.G. v. R.G., 449 N.J. Super. 208, 219 (App. Div. 2017).  The statute provides, in part, that a "[v]ictim of domestic violence" includes "any person . . . who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present household member or was at any time a household member."  N.J.S.A. 2C:25-19(d).

Defendant cannot seek the protection of the PDVA by alleging in his case against plaintiff they were household members but then seek to avoid the PDVA in her case against him by denying they were household members.  Moreover,

sufficient evidence supports the conclusion the parties were household members. The parties both testified they had shared a household. Defendant asserted they had lived together in a townhome in the domestic-violence complaint he filed seeking a TRO against plaintiff. During the hearing, he testified they had lived in the same household. That they lived together for a month or less does not render them any less household members.

In finding plaintiff had established the first prong of Silver, the trial judge overlooked fundamental due-process principles, requiring reversal. "At a minimum, due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" H.E.S. v. J.C.S., 175 N.J. 309, 321-22 (2003) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). "[T]here can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice." Id. at 322 (quoting Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978)). Defendant had a right to be on notice of the predicate act that was the basis of plaintiff's complaint and FRO request and of the type of crime under N.J.S.A. 2C:25-19(a) he purportedly had committed in connection with the alleged predicate act.

The trial judge did not mention in either his decision on the record or his amplification the predicate act that was plaintiff's stated basis for her complaint and FRO request: the theft of her social security number and the use of the stolen number to shut off the gas. Instead, the trial judge based his decision on an alleged prior act of domestic violence: the theft of plaintiff's medication. In his decision, he referred to the medication theft as a "form of harassment," but in his amplification he said, based on the medication theft, plaintiff had proven defendant committed the predicate act of criminal mischief. In her complaint plaintiff did not allege defendant had engaged in criminal mischief, N.J.S.A. 2C:17-3, and in his decision on the record, the trial judge made no finding defendant had engaged in criminal mischief. The trial judge also stated in his amplification that the medication theft, "along with other acts of harassment suffered at the hands of the defendant," constituted domestic violence meriting the issuance of an FRO. But, in his decision, he had made no finding of any other act of harassment, and, in his amplification, he did not identify what those other acts of harassment were.

In J.F. v. B.K., 308 N.J. Super. 387, 391-92 (App. Div. 1998), we held "[i]t constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of

domestic violence which are not even alleged in the complaint." We recognize the medication theft was referenced in the complaint as part of a prior history of domestic violence, but it was not the predicate act that formed the basis of plaintiff's complaint and FRO request. In addition, criminal mischief was not alleged in the complaint. Thus, defendant was given no notice the trial judge could find he had engaged in criminal mischief and was deprived of an opportunity to prepare a defense to that charge. The issues litigated at the hearing and that formed the basis of the trial judge's decision differed sufficiently from those outlined in the complaint such that defendant was deprived of his due-process rights. Moreover, the trial judge's holding, as articulated in his amplification, that defendant's criminal mischief and "other acts of harassment" supported the issuance of the FRO cannot stand because the trial judge on the record did not make any findings that defendant had engaged in criminal mischief or had committed "other acts of harassment."

The trial court also erred in finding plaintiff had established the second prong of <u>Silver</u>. "[T]o obtain an FRO under the [PDVA], a plaintiff must not only demonstrate defendant has committed a predicate act of domestic violence . . . but also that a restraining order is necessary for his or her protection." <u>C.C.</u>, 463 N.J. Super. at 429; <u>see also</u> <u>Silver</u>, 387 N.J. Super. at 126. "[T]he guiding

standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

The trial judge applied none of the factors of N.J.S.A. 2C:25-29(a) and made no findings whatsoever about the need of an FRO to protect plaintiff. In his amplification, the trial judge stated only that "[t]he proof," which he did not identify, "establish[ed] that [defendant] acted in a way to seriously annoy the plaintiff." Mere annoyance does not meet the standard set forth in Silver. It is not one of the enumerated factors set forth in N.J.S.A. 2C:25-29(a) to be considered by a court in issuing an FRO. The record is devoid of any facts supporting a finding the FRO was needed to protect plaintiff "from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. Plaintiff did not express any continued fear of defendant and has no reason to contact him. See D.M.R. v. M.K.G., 467 N.J. Super. 308, 325 (App. Div. 2021) (reversing FRO when the plaintiff had not expressed any fear of the defendant and had no reason to contact him).

Reversed and the FRO is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1527-20